ELIJAH SMITH *v.* ASA PERRY, ADMR. OF ESTATE OF I. REED.

*Action for breach of covenant—who may sue—Evidence—Construction of deeds—of the Constitution of 1777, and act of 1779, requiring the record of conveyances—Grantor & Grantee.*

The Constitution of this state adopted in 1777, required, in general terms, that all conveyances of land should be recorded in the town clerk's office; and in 1779 the Legislature passed an act in accordance with such provision, requiring such conveyances to be acknowledged and recorded in such office; *it was held,* that these provisions had exclusive reference to such conveyances of land only, as operated *inter vivos,* and not to mere devises of land.

And so in an action for covenant broken, *it was held,* that a will, that came in force at that time, was admissible in evidence, as tending to prove that the recovery of the land, in question, was by elder and better title than that of the covenantor, though the will had not been recorded in the town clerk's office.

And the plaintiff also offered the deed of B. and wife, of the premises in question, to Reed, the defendant's intestate, the *wife of B.* being the daughter of the testator, and it appeared that the said deed was not sufficiently acknowledged by the *feme;* on objection, the deed was *held* admissible in evidence, to show claim of title by Reed, the intestate, and to show claim of title under the wife of B.

Smith *v.* Perry, Admr.

And as Reed, the intestate, held the land under B., his possession would not become adverse to the heirs of the wife of B., until their right of entry accrued, which could not be during coverture, or the estate by courtesy.

And where in a deed the first covenant was to M., the grantee, alone, and the *habendum* was expressed, in terms to the grantee, his heirs and assigns, and the covenant of warranty was general, "to warrant and defend the premises" not in terms to M. alone, while M. held them, but into whosesoever hands they should come, *it was held* that this was not controlled by the preface that "I covenant with said M.," and that these covenants were operative after the grantee conveyed, and should be construed, as virtually in favor of any one seized of the estate.

At common law, a covenant running with the land in the name of the *grantee only*, may be sued, by any one in the estate, at the time of breach.

As a general rule, the right of the grantee, or any intermediate assignee, to sue upon the covenants, after parting with the estate, is absolutely dependent upon his having made satisfaction to the person evicted. But if the suit is brought for the benefit of the person evicted, and especially when the estate of the original warrantor, is in a course of settlement in insolvency, there seems no hazard of injustice, in giving judgment for the full amount of the value of the land, against the estate once, on condition that if any other allowance shall be obtained, the judgment shall be reduced to a nominal sum. And in the present case, the court so rendered judgment, the action having been brought by the grantor of the person evicted, but he had recovered judgment against the present plaintiff on the breach, and made no objection to the present suit, nor had he presented any claim against the estate of Reed.

APPEAL from the probate court, for the district of Rutland; from the disallowance of the claim of the plaintiff, by the commissioners upon the estate of Issachar Reed, late of Rutland, deceased.

The plaintiff filed in the county court, the following amended declaration:

" In a plea of the case for covenant broken, for that on the 12th " day of January, 1803, the said Issachar Reed, by his certain " deed of that date, duly executed, signed with his hand and sealed " with his seal and acknowledged and recorded, all in due form of " law, for the consideration of eleven hundred dollars, paid to him, " the said Issachar Reed, by one Zerah Mead, then of said Rut- " land, but since deceased, did give, grant, bargain, sell, alien, re- " lease, convey and confirm unto the said Zerah Mead, his heirs " and assigns, the following described piece of land and premises " situate in said Rutland, and at the date aforesaid, bounded as fol- " lows :" [Here follows the description of the said land.]

" To have and to hold the said granted and bargained premises " and the appurtenances thereof, unto him, the said Zerah Mead, " his heirs and assigns forever, to and for their own proper use, " benefit and behoof. And the said Issachar, among other things, " in and by his said deed, covenanted and engaged by his said deed, " with the said Zerah Mead, and to his heirs and assigns forever to " warrant and defend the premises granted and bargained, describ- " ed in his said deed as above set forth, to the said Zerah Mead, his " heirs and assigns forever against all claims and demands whatso- " ever, as by the said deed by the said Issachar, ready here in court " to be shown more fully and at large appears. And the said Zerah " Mead, thereupon on the same day, entered into the possession of " said premises. And the said Elijah avers that the same land and " premises, by good and proper warranty deeds, with the usual cov- " enants in such deeds, and for valuable considerations from grant- " ees to grantors, and well and lawfully executed and acknowledged, " has been deeded to him, the said Elijah, and by him to one Dennis " Smith of said Rutland, and the possession of said land and premises " has followed said deeds. And the said Elijah also avers that at " the date of the said Issachar's said deed, and ever thereafter, " the fee and title of inheritance in said land and premises, was in " the heirs of Christopher Bates and wife ; to wit, in Silas Gid- " dings and Rachel Giddings, his wife, Lois Bates, Harris Bates, " Amy Bates, Hepsy Bates, Roswell Bates and David Bates, be- " ing said heirs, and who had the fee in said land and premises at " the date of said deed. That the said heirs afterwards brought " their proper action of ejectment against said Dennis Smith and " Jonathan Russell, his tenant, in possession of said premises, for " the seizin and possession of said land and premises, and their " damages and costs, returnable to the county court in and for the " county of Rutland, at the September Term of said Court, 1839, " and such proceeding were had in said cause, that at the Sept. " Term, 1840, of said county court, the said heirs, Silas Giddings " and others recovered a judgment for the possession of said prem- " ises and land, and for 75 dollars damages and their costs in that " behalf, against the said Dennis and said Russell—to which judg- " ment exceptions were duly taken, and the said cause passed to " the Supreme Court, and such proceedings were further had in " said cause in the Supreme Court aforesaid, that at the term of

XXVI 19

" said Supreme Court held at Rutland, in and for said Rutland
" county, on the 5th Tuesday of January, 1843, the said heirs,
" Silas Giddings and others, plaintiffs as aforesaid, recovered final
" judgment in said cause for their title and possession of said de-
" scribed land and premises, and for the sum of 87 dollars dam-
" ages, and the sum of 50 dollars and 5 cents costs of said suit, and
" by force of a proper writ of execution in said cause, entered up-
" on and took possession in due form of law, of said lands and
" premises, and turned the said Dennis Smith out of the same, and
" said heirs now legally hold the same land in fee ; and said heirs,
" plaintiffs as aforesaid, duly collected of said Dennis, the said
" damages and costs, recovered as aforesaid ; to wit, on the 5th day
" of June, 1847.    Whereupon the plaintiff avers that the said
" Dennis Smith brought his action against the plaintiff upon the
" covenants of warranty in the plaintiff's said deed to Dennis
" Smith of the said lands and premises, returnable to the county
" court, within and for said Rutland county, at the September term,
" 1847, of said court, and such proceeding were had in said last
" mentioned cause, that at the April term of said court, 1850, the
" said Dennis recovered judgment therein against the said plaintiff,
" for the sum of 2,063 dollars and 31 cents damages, and 51 dol-
" lars and 16 cents costs of said suit, as by the record thereof re-
" maining in said court appears.    And thereupon the plaintiff avers
" he was compelled to pay and satisfy, and did pay and satisfy to
" said Dennis the amount of said judgment for damages and costs ;
" to wit, on the first of July, 1850.    And the said Elijah further
" says that the title upon which the said Silas Giddings and others,
" heirs as aforesaid, recovered the said judgment against said Den-
" nis, was older, better and independent of the title derived from
" the said Issachar Reed, that the said Issachar Reed deceased at
" said Rutland ; to wit, on the          day of          , 183  , and
" that Asa Perry, was on the 15th day of May, 1841, duly ap-
" pointed administrator upon the estate of said Issachar Reed, and
" the eviction of the said Dennis from said premises as aforesaid,
" under the title of the said heirs of Christopher Bates and wife,
" was while the said Asa was proceeding in the settlement of said
" estate, and before the estate of said Issachar Reed was divided
" and set out to the heirs of said estate, and while the property
" pertaining to the estate of said Reed remained in the hands of

"said Asa as administrator as aforesaid. And in fact the plaintiff "says that the said Asa has not yet settled said estate, and still re- "tains the possession of the property of said estate, in his hands, "as assets for the payment of the just claims against said estate. "And the plaintiff says that by the proper warranty deeds of said "premises by said Zerah Mead to this plaintiff, well executed and "for a valuable consideration, the said covenants of the said Issa- "char have come and inured to this plaintiff, who is entitled to "the benefit of the said covenants; that according to the said cov- "enants the said Dennis should have enjoyed said premises in "lawful estate in fee simple, and this plaintiff saved from the said "judgment of said Dennis against him by which he is damnified. "And so the said plaintiff says the said Issachar, during his life "time, and his said administrator since his decease, did not and "has not kept said covenants, but broken the same," &c.

The defendant craved oyer of the said deed of the said Issachar Reed, in the plaintiff's declaration mentioned, which is read to him in these words:

"Know all men by these presents, that I, Issachar Reed, of Rut- "land, in the county of Rutland, and State of Vermont, for and "in consideration of eleven hundred dollars, received to my full "satisfaction of Zerah Mead, of Rutland, in the county of Rut- "land, and State of Vermont, do by these presents give, grant, bar- "gain, sell, alien, release, convey and confirm unto the said Zerah "Mead, heirs and assigns, a certain piece, or tract, or parcel of "land, situate, lying and being in Rutland, aforesaid, and is bound- "ed:" [Here follows the description of the land.]

"To have and to hold the above granted and bargained prem- "ises, with the appurtenances, thereof, unto him, the said Zerah "Mead, his heirs and assigns forever, to and for their own proper "use, benefit and behoof.

"And also, I, the said Issachar Reed, do for my heirs, execu- "tors and administrators, covenant with the said Zerah Mead, that "at and until the ensealing of these presents, I am well seized of "the premises as a good indefeasible estate, in fee simple, and that "the same is free from all incumbrances whatsoever, and that I "have a good right to bargain and sell the same in manner and "form as above. And I do hereby engage for myself and heirs

" to warrant and defend the above granted and bargained premises " against all claims and demands whatsoever.

" In testimony whereof, I have hereunto set my hand and seal " this 12th day of January, A. D. 1803.

ISSACHAR REED." (Seal.)

Which being read, the defendant pleaded, 1. That the said supposed deeds or writings obligatory in the said declaration of the appellant mentioned, are not the deeds of the said Issachar, and of this put himself on the country.

2. And for a further plea, the defendant pleaded that the said appellant ought not to have and maintain &c., because he says the said Issachar did not in and by said deeds, in said declaration mentioned, covenant as mentioned in said declaration, to and with the assigns of the said Zerah Mead, but only with the said Zerah Mead, as by the said deeds of the said Issachar appears, and of this the defendant put himself on the country.

3. And for a further plea, the defendant pleaded, that said Issachar Reed and his heirs have warranted and defended the premises granted and bargained in and by his said deed, against all claims and demands whatsoever, according to the form and effect of said deed, of said Issachar, and of the said covenant of the said Issachar by him in that behalf, made as aforesaid, &c., and of this defendant put himself on the country.

4. And for a further plea, the defendant pleaded, that said Issachar did during his life time, at all times warrant and defend the premises granted and bargained in and by his said deed, against all claims whatsoever, according to the form and effect of the said deed of the said Issachar, and of his covenant therein, &c., and of this defendant put himself on the country.

5. And for further plea, the defendant pleaded, that neither the said Silas Giddings, Rachel Giddings, his wife, Lois Bates, Harris Bates, Amy Bates, Hepsy Bates, Roswell Bates, and David Bates, nor any other persons other than the said Dennis Smith, were at the time mentioned in said declaration, the rightful owners of the premises, described in the deed of the said Issachar, to the said Zerah Mead; nor had they at that or any other time after the conveyance of the said Elijah to said Dennis, an independent, elder or better title to said premises, than that of the said Dennis derived from or under that conveyed by the said Issachar to the

said Zerah Mead, and of this defendant put himself on the country.

The defendant also in addition to the above pleas, filed, in substance, the following plea, " that the said appellant ought not to have and maintain &c., because said appellant has not paid and satisfied to the said Dennis Smith the amount of said judgment for damages and costs, recovered by said Dennis against him, or any part thereof &c., and this said defendant prays may be inquired of," &c.

*Replication.*—1. The plaintiff as to the *first* and *fifth* pleas of the defendant, whereof defendant put himself on the country, doth the like.

2. And as to the *second* plea of the defendant, the plaintiff demurred; and for causes of demurrers set forth the following : " For that defendant has not traversed or attempted to put any material matter of fact alleged by the plaintiff in his said declaration, but has attempted to put a matter of law in issue, to be tried by a jury," &c.

3. And the plaintiff, as to the *third* and *fourth* pleas of the defendant, for replication to the same, saith that he ought not to be barred &c., because he says that after the decease of the said Reed, and after the granting of letters of administration to the said Asa upon the estate of the said Reed, and while the said administrator was proceeding in the settlement of said estate, and before the same had been divided among the heirs to said estate, in the court of probate, and while the property which pertained to the said Reed in his life time, remained in the hands and possession of the said Asa, as such administrator, as assets for the payment of the just debts of the said Reed, the said Dennis Smith was evicted and expelled from the possession of said premises by a title paramount to the title of the said Reed; as alleged in the plaintiff's declaration. And so the plaintiff says that said Asa, as such administrator as aforesaid, has not kept and performed the said covenants of the said Reed, but has broken the same, and this the said Elijah is ready to verify. Wherefore inasmuch as the said defendant has not answered the said breaches of covenant, for which the said plaintiff seeks to recover, the plaintiff prays judgment and his damages, &c.

*Rejoinder.*—1. The defendant, to the replication of the plaintiff,

to his third plea says, (in substance) that the plaintiff ought not by reason &c., because he says that the said Dennis Smith was not evicted and expelled from possession of said premises by a title paramount to the title of the said Reed, after the decease of said Reed, and after the granting of letters of administration to the said Asa, upon the estate of said Reed, and while the said administrator was proceeding in the settlement of the said estate, and before the same had been divided among the heirs to said estate, in the court of probate, and while the property that appertained to the said Reed in his life time, remained in the hands and possession of the said Asa, as such administrator as aforesaid, as assets for the payment of the just debts of the said Reed, as the said Elijah in his replication has alleged, and of this defendant put himself on the country.

2. And defendant demurred to the replication of the plaintiff to his *fourth* plea.

*Sur-Rejoinder.*—1. The plaintiff, as to the rejoinder of defendant first pleaded, whereof defendant put himself on the country, doth the like.

2. And as to the rejoinder of defendant secondly rejoined, plaintiff says his replication to the *fourth* plea of defendant, is sufficient in law, and that said rejoinder is insufficient, &c.

The County Court, April Term, 1853,—PECK, J., presiding,— on the hearing upon the demurrer to defendant's second plea, and to the replication to the fourth, adjudged the second plea insufficient, and the replication to the fourth plea sufficient, and overruled defendant's demurrer. To which descisions the defendant excepted.

At the same Term of the county court, there was a trial by the court of the issues of fact raised by the pleadings, which with the declaration are made part of the case.

On trial, in order to prove that the recovery by Giddings and others, stated in the declaration was by an elder *and better* title than that of Reed; the plaintiff showed *the* title in the premises to have been formerly in one Daniel Harris, and for the purpose of tracing the title of Giddings and others from said Daniel Harris, the plaintiff offered in evidence the original will of the said Harris, which was objected to by the defendant, on account of its never having been recorded in the town clerk's office of Rutland, and the defendant offered to prove that it had never been so recorded.

No title, except from Harris, was attempted to be shown in Giddings and wife. The court decided that a record of it in the town clerk's office was unnecessary, and treating it as proved that it had not been so recorded, admitted it to be read in evidence, in connection with the deeds and evidence hereafter mentioned :—to which decision the defendant excepted. The will was dated June 9th, 1774, and was probated the 2d day of May, 1781.

No legal testimony was offered to show, nor was it proved that the plaintiff had ever paid, or in any way satisfied the judgment recovered in favor of Dennis Smith against him; and the court decided that a payment or satisfaction of that judgment was unnecessary to entitle the plaintiff to recover, and rendered judgment (the other points in issue being satisfactorily proved) for the plaintiff to recover. To this decision the defendant also excepted.

The plaintiff introduced a deed of the premises from James Mead to Daniel Harris, dated December 25th, 1773, a deed of the premises from Christopher Bates and his wife, Elizabeth, (who was proved to be the same Elizabeth Harris who was devisee in said will,) dated in 1797, to Issachar Reed, a deed of the premises from Issachar Reed to Zerah Mead, dated January 12th, 1803; a deed of the premises from Zerah Mead to Elijah Smith, dated April 21st, 1806; a deed of the premises from Elijah Smith to Dennis Smith, dated December 28th, 1825.

The defendant objected to the introduction of the deed from Christopher Bates and wife, on the ground that at the date of that deed a justice of the peace had no power to take the acknowledgment of a deed by a married woman; but the court decided that it was admissible, for the purpose of showing that defendant and plaintiff, and Giddings and wife, and Dennis Smith claimed under said will through Elizabeth Harris, and for which purpose it was offered by plaintiff in connection with said will.

It appeared, that said Elizabeth died February 24th, 1833, and that Christopher Bates died May 8th, 1836. The recoveries alleged in favor of Giddings and wife against Dennis Smith, and in favor of Dennis Smith against Elijah Smith, were proved.

It appeared, that said Giddings' wife was the daughter and heir of said Elizabeth, by her marriage with said Bates.

It also appeared, that there had been an adverse uninterrupted possession of the premises by Zerah Mead, Elijah Smith, and

Dennis Smith, under their deeds respectively, which taken together was more than fifteen years next before the commencement of the suit of Giddings and wife, against Dennis Smith, but that the said Elizabeth was a *feme covert* at the time said possession commenced, and continued so down to within fifteen years next before the commencement of that suit, and until her death in 1833.

The court found that Dennis Smith knew that the plaintiff was prosecuting this suit, and it did not appear that he had made any objections to his prosecuting the same, or that he had made any claim on said Reed, or on his estate, on said Reed's covenants in his deed.

Exceptions by defendant.

*C. L. Williams* for defendant.

I. The covenant of Issachar Reed in his deed to Zerah Mead, as set forth in defendant's first plea, was made to and with Zerah Mead alone, and not with his assigns. This appearing on oyer of the deed, shows the declaration bad; and on this account the demurrer to our second plea should have been decided in our favor.

The covenants in the deed are in terms with Mead alone, and from the language used cannot be extended to his assigns.

When a party declares how far he will be bound to warrant, that is the extent of his covenant. 3 U. S. Digest 121.

The intention of the parties must govern when there is no ambiguity. Where a clause in a deed containing covenants of seizin in blank, as to the names of the parties who are seized it does not amount to a covenant of seizin in the grantors. 1 U. S. Digest 674.

In the present case, the grantor omitted to mention or name the assigns of Mead in the covenanting clauses; and this omission, we insist, *was intentional*, for he expressly mentions them in the statement of the persons to whom he conveys, and in the *habendum* clause. The prefatory statement of the person with whom he covenanted, without any mention of what his covenants were, must be taken as his avowed declaration of the person, and of *the only person*, with whom were made all the covenants thereafter mentioned.

II. The plaintiff has suffered no damage; he was not evicted from the premises while he possessed them, nor has he been com-

Smith *v.* Perry, Admr.

pelled to pay, and actually paid his grantee since. Dennis Smith could sustain this action as well as the plaintiff, his mere recovery of a judgment against the plaintiff without a satisfaction of it, would not bar him, nor will a recovery by the plaintiff with a misappropriation of the funds be any defence to the defendant against Dennis Smith.

While, therefore, Dennis Smith is the only one, as yet *actually damaged,* our liability is only to him; and the issue upon our *sixth* plea should have been decided in our favor. 4 Kent 472, *note,* and cases cited.

III. The will of Daniel Harris was not admissible as evidence for the plaintiff, upon the trial of the issue upon our *fifth* plea. At the time it was probated, (1781,) the constitution required, as it ever since has, that " All deeds and conveyances of lands shall be recorded in the town clerk's office in their respective towns." (Slade's State Papers 253, 258.) And an act of the Legislature passed in 1779, (State Papers 327,) required the town clerk to record in a suitable book " every man's house and land granted and measured out to him." Was this will a conveyance ? The title to the premises was never transmitted or conveyed from Daniel Harris, except by this will; and it must have been the intention of the framers of the constitution, in using the ₍word " *con veyances,*" to include all instruments in writing, other than deeds, by which titles were *conveyed* from one person to another, in order that everything, pertaining to the ownership of land, might appear upon the town records.

The deed from Christopher Bates and wife to Issachar Reed, was inadmissible, it never having been acknowledged by her, and was, therefore, as to her, *ipso facto* void, (15 Vt. 356,) it conveyed no title from her to the grantors of Dennis Smith, and should not have been admitted to show in us an invalid claim, upon which we did not rely, and which we could not set up ourselves. The deed being, as to Elizabeth Harris, void, it did not and could not show that we claimed through her, and was therefore inadmissible for that purpose. The possession of Dennis Smith and his grantors, under the deed of Issachar Reed, or that of Zerah Mead, given as early as 1806, was a sufficient title for him, unless Giddings and his associates had a valid title from Daniel Harris, which

could only be shown by introducing his will; if the will was inadmissible, no such title could be shown.

*W. H. Smith* for plaintiff.

I. The defendant's second plea tenders the issue to the country upon *matters of law ;* and is clearly open to demurrer. *Hodges* v. *Strong,* 10 Vt. 247.

II. The original will of Daniel Harris was properly admitted in evidence without having been recorded in the town clerk's office. Its *age* proved it; and both parties claiming under *it* gave either the right to use it as evidence. *Giddings* v. *Smith,* 15 Vt. 348–9.

Neither the constitution of July 2, 1777, or the statute°of 1779, contemplated the recording of wills, but only deeds &c. Vt. State Papers 253, 327, 336.

. Such papers as were contemplated, were to have been " *acknowledged,*" as well as recorded, which shows that wills could not have been intended.

Besides, the *exceptions* in the act will admit this will between these parties, as conveyances *without record,* by the act, were to be good *as between the parties,* and equally so between *privies,* claiming under the same title. Vt. State Papers 336.

The deed from Bates and wife to Issachar Reed, was admissible for the purpose for which it was offered and admitted ; even though it might not have been, to have shown *title* in Reed ; it was for the purpose of showing, or tending to show *claim* of *title* by Reed from that source. A defective deed is often admitted to show the parties' *claim of title* ; and might have been used without any acknowledgment. *Pitkin* v. *Leavitt.* 13 Vt. 383.

III. The defendant can take no benefit, nor can the plaintiff be prejudiced, by the possession had and held under Bates'and his wife's deed, and then of defendant's assignees; since that possession was legal and proper under Bates' deed till his death, in May, 1836; and the heirs brought their action of ejectment in 1839.

The title of the heirs was wholly independent of Elizabeth Bates, and no possession under her could make a title against them. But all foundation for a possessory title fails, since she was under the excepted disability of *coverture* at the time.

IV. It was wholly unnecessary to have alleged payment of

the judgment of Dennis Smith, against this plaintiff, or having alleged to prove it. 1 Aik. 239.

The case finds that the ultimate grantee of this covenant has pursued this plaintiff, his grantor, to final judgment: and now stands by and sees this plaintiff prosecuting this claim against the defendant without remonstrance, and without himself presenting any claim against this estate. This issue was immaterial, and should be disregarded, and judgment rendered according to the rights of the parties upon the merits of the whole case. 11 Vt. 195.

V. The " elder and independent title " of the heirs alleged in the declaration is fully proved.

The case finds the title to have been in Daniel Harris. *Giddings* v. *Smith*, 15 Vt. 344.

VI. The *covenant of* warranty, in the deed of Issachar Reed, is *general* and *unlimited* in its terms, *running with the land*, and enures to the security and benefit of any subsequent grantee of the land.

The *conveyance* in the deed and the *habendum* is to the grantee and his heirs and assigns forever, and his covenants of *warranty* follows the conveyance of the land.

That the *personal* covenants of *title*, *seizin*, &c., are by the *deed*, as they are *by law*, *limited*, and not to the assignees, in no manner affects the covenant of *warranty* with which the former are not connected in the deed or likened in the law. *Williams* v. *Wetherby*, 1 Aik. 239.

The opinion of the court was delivered by

REDFIELD, Ch. J. I. In showing that the recovery of the land was by elder and better title than that of the covenantor, the will of Daniel Harris was put in the case, by the plaintiff. It is objected to this, that it did not appear to have been recorded in the town clerk's office. This will was dated June 9, 1774, and proved May 2, 1781. It is not claimed that the existing statute requiring proceedings in the probate court, affecting the title of real estate, to be recorded in the town clerk's office, can affect the present case, this statute being only of a comparatively recent date. But reliance is made upon the constitution of the state, at the time this will came in force, which required, in general terms,

all conveyances of land to be recorded in the town clerk's office, and the statute passed in accordance with such provision, which required such conveyances to be acknowledged and recorded in such office. We think those provisions undoubtedly had exclusive reference to such conveyances of land only, as operated *inter vivos*, and not to mere devises of land. It was certainly not the practice to record wills, to any great extent in the town clerk's offices, in many sections of the state, until a comparatively late period, which gave rise probably to the present statute upon that subject.

II. The deed of Christopher Bates and wife, the wife being a daughter of said Harris was also put in evidence, by the plaintiff for the same purpose. This deed is objected to, as not sufficiently acknowledged by the *feme*, that being done before a justice. But we think the deed was sufficiently proved to make it evidence, by way of estopel, upon the grantee. It was only offered to show claim of title by Reed, and was the deed of Bates, and good to show claim of title under the wife, and thus to introduce the very defect of title, upon which the land was lost to the covenantee, or his assignee; i. e., that no fee simple existed by the will, in Bates' wife, and that neither she or her husband could convey any such estate. As in fact Bates survived his wife, the deed conveyed all that it would have conveyed, if it had been properly executed by the wife, unless it would then have barred the entail, which is not very probable. It will show then, that Reed held the land under Bates, and that his possession would not become adverse to the heirs of the wife, until after their right of entry accrued, which could not be during the coverture, or the estate by courtesy. We think this deed was evidence for this purpose, and that the proof did show that the recovery was by elder and better title, and so met the issue.

III. The deed of Reed to Zerah Mead, is certainly not in the most usual form. But it seems to have been drawn according to the legal effects of the covenants. Those of seizin, and good right to convey, and against incumbrances which are merely personal, and not assignable, are in terms confined to the grantee, which is giving them all the force, which, in law, could be given to them. As they do not run with the land, and cannot be sued by an assignee of the estate, the introduction of the word assigns

would have been merely nugatory. So also of executors and administrators, as they succeed the legal rights of the covenantee, by act of law, as well without being named, as if they were so named.

But the deed shows, that no purpose existed of limiting or attempting to limit the assignable quality of the estate conveyed, as the habendum of the deed is expressed in terms to the grantee, his heirs and assigns. And if it was the purpose to convey an assignable estate, and covenants were given to fortify the title, and for quiet enjoyment, and which do run with the land, it must have been intended, that these covenants should be operative after the grantee should convey, and in favor of all, who, in privity of estate, should be entitled to take the benefit of them. And this no doubt would be the legal effect of such a covenant in general terms to the grantee. It should be construed as virtually in favor of any one seized of the estate, as he would be the only one damnified by the breach unless in express terms of negation, confined to the grantee, as the three first covenants in this deed seem to be.

But the covenant of warranty is general, " to warrant and defend the premises," not in terms to Mead alone, while Mead held them, but into whosesoever hands they should come. We must think this was the purpose of having the covenant expressed, in these general terms, and that it is not controlled by the general preface, that " I covenant with said Zerah Mead," which really does not seem to have any very apparent force in the deed. But it seems perfectly well settled, that at common law, a covenant running with the land, in the name of the *grantee only*, may be sued by any one in the estate, at the time of breach. 1 Smith's Leading Cases 110, citing a great many cases, and *Kingdon* v. *Nottle*.

IV. In regard to the right of the present plaintiff to sue without first making satisfaction to the person evicted, there is perhaps some difficulty.

In Connecticut, in *Booth* v. *Starr*, 1 Conn. 244, and in N. H. in *Chase* v. *Weston*, 12 N. H. 413, it is considered, that the right of the grantee, or any intermediate assignee, to sue upon the covenants, after parting with the estate, is absolutely dependent upon his having made satisfaction to the person evicted. And upon principle it would seem such should be the rule, in order to pre-

vent a liability to repeated judgment, for the same thing. This be sure is not an unanswerable impediment. There are cases where a party is so situated as to be subject to such embarrass- ment. But ordinarily such a result is to be deprecated, as it might render a resort to chancery necessary.

The first covenantor seems to be the one primarily liable. The other covenantors come in aid of his undertaking, and are virtual sureties, with a right of indemnity over against the first warrant- or. But as the undertaking is to save them absolutely harmless, even from liability, they may perhaps all sue at once for indemni- fication, upon the occurrence of an eviction. But upon common principles can they recover the full value of the breach, until they have paid the amount to the person evicted? If so, the original covenantor may be liable to an indefinite number of suits and judgments, for the full value of the land, and the payment of one, will possibly not satisfy the other judgments at law. It clear- ly will in equity, if made, as it should be, to the person evicted.

But if the suit is brought with the privity, and for the benefit of the person evicted, and especially when the estate of the original warrantor, is in a course of settlement, in insolvency, there seems no hazard of injustice, in giving judgment for the full amount of the value of the land, against the estate once, on condition that if any allowance shall be obtained, this judgment shall be reduced to a nominal sum. This will remove all question, and the judgment will be affirmed, under this rule, and so certified to the probate court.

It has been decided in this state, that the person evicted has the primary right of action, and that after the intermediate grantee has made satisfaction to the person evicted, he alone can sue. *Williams* v. *Wetherbee,* 1 Aikens 233. And that an intermediate grantee who has conveyed the estate, without warranty, cannot sue for a breach of the covenant, after he parted with the estate. *Keith* v. *Day* 15 Vt. 660. And possibly the recovery of judg- ment, against the intermediate warrantor, for the full value of the premises, may alter the state of such warrantor, as to his right of full damages. I do not now see how it should, upon general principles. In Smith's Leading Cases 110, in notes to Spencer's case it is said by Mr. Smith, that *the better* opinion of the Eng- lish law is, that the covenantee, after assignment, cannot sue for a

breach in the time of the assignee. *Green* v. *Jones* 6 M. & W. 656.

The judgment is affirmed under a rule, that if any other sum should be allowed against the estate of Reed, for the breach of this same covenant, it shall be deducted from the damages recovered in this action. And is thus to be certified to the probate court.